107 P.3d 90 (2005)
153 Wash.2d 689
STATE of Washington, Respondent,
v.
Tony Douglas ROBINSON, aka: "T," "Tone," Tony Martin Robinson, Anthony Jimmerson, Anthony Robinson, Tony Marley, Tony L. Robinson, Tony J. Robinson, Tony A. Robinson, Petitioner,
Johnny Rhoades, aka: "Jr," Johnny S. Ades, Manuel Binson, John Fleming, Johnny Fleming, John Flemming, Johnny Flemming, Bobby Ingrahm, Bobby Ram, Johnny Rhoads, Johnny Rhodes, Johnnie Rhondes, Manuel J. Robinson, Manuel Robinson, Tony Robinson, Johnny Rohades, Johnny Rohdes, Defendant.
No. 74611-7.
Supreme Court of Washington, En Banc.
Argued September 14, 2004.
Decided February 24, 2005.
*91 Thomas Michael Kummerow, Seattle, for Petitioner.
Kimberly Anne Thulin, Hilary A. Thomas, Whatcom County Pros. Office, Bellingham, for Respondent.
Pamela Beth Loginsky, Wash. Ass'n of Pros. Atty., for Amicus Curiae Wash. Ass'n of Prosecuting Attys.
FAIRHURST, J.
We are asked to determine whether CrR 3.1(b)(2) requires that counsel be provided at state expense for all defendants who move to withdraw their guilty pleas after sentencing pursuant to CrR 7.8. We hold that it does not and affirm the Court of Appeals.

I. FACTS
Tony Douglas Robinson entered two separate Alford[1] pleas to one count of kidnapping and one count of delivery of cocaine. He received a separate sentence for each count. Robinson directly appealed his kidnapping conviction, alleging in part breach of the plea agreement. At all times during plea bargaining, sentencing, and appeal, Robinson was represented by counsel.
Almost one year after sentencing, but prior to the Court of Appeals decision on Robinson's appeal, Robinson moved pro se pursuant to CrR 7.8 to withdraw both of his guilty pleas, alleging ineffective assistance of counsel, prosecutorial misconduct by reason of breach of the plea agreement, and newly discovered evidence. He also moved for the appointment of counsel to present his motions to withdraw but cited no authority that would entitle him to counsel. The trial court summarily denied all motions.
The Court of Appeals filed an unpublished opinion affirming the kidnapping conviction. State v. Robinson, noted at 114 Wash.App. 1012, 2002 WL 31412725 (2002).
Robinson appealed the trial court's denial of his motions to withdraw guilty pleas and for appointment of counsel. The trial court appointed counsel to pursue this appeal.[2] Before the Court of Appeals, counsel argued that CrR 3.1(b)(2) entitled Robinson to representation below when moving to withdraw his guilty pleas. State v. Robinson, noted at 117 Wash.App. 1073, slip op. at 3, 2003 WL 21690525 (2003). The Court of Appeals reversed the denial of the motion to withdraw *92 one of the guilty pleas based on newly discovered evidence, but let stand the denial of the motion to withdraw the other plea and the denial of appointment of counsel. Id. at 4, 9-10. We granted review solely on the question of entitlement to counsel under CrR 3.1(b)(2).

II. ANALYSIS
Robinson asserts that he was entitled to counsel at state expense under CrR 3.1(b)(2) when he moved to withdraw his guilty pleas after sentencing pursuant to CrR 7.8.
CrR 3.1(b)(2) provides in full:
A lawyer shall be provided at every stage of the proceedings, including sentencing, appeal, and post-conviction review. A lawyer initially appointed shall continue to represent the defendant through all stages of the proceedings unless a new appointment is made by the court following withdrawal of the original lawyer pursuant to section (e) because geographical considerations or other factors make it necessary.
The court will apply canons of statutory interpretation when construing a court rule. City of Seattle v. Guay, 150 Wash.2d 288, 300, 76 P.3d 231 (2003). We review construction of a court rule de novo because it is a question of law. See Judd v. Am. Tel. & Tel. Co., 152 Wash.2d 195, 202, 95 P.3d 337, 340 (2004). While the plain language of a court rule controls where it is unambiguous, under our court rule interpretation guidelines we must examine CrR 3.1(b)(2) in context with the entire rule in which it is contained as well as all related rules. See Rest. Dev., Inc. v. Cananwill, Inc., 150 Wash.2d 674, 682, 80 P.3d 598 (2003); cf. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 10, 43 P.3d 4 (2002) (requiring consideration of surrounding text when discerning the plain meaning of a statutory provision).
CrR 3.1, captioned "RIGHT TO AND ASSIGNMENT OF A LAWYER," has six parts. Part (a), captioned "Types of Proceedings," establishes the scope to which the rest of the rule applies. It provides that the right to a lawyer extends "to all criminal proceedings for offenses punishable by loss of liberty." CrR 3.1(a). Part (b), is captioned "Stage of Proceedings." Subpart (b)(1) tells us when the right first accrues: "as soon as feasible after the defendant is taken into custody, appears before a committing magistrate, or is formally charged, whichever occurs earliest." Subpart (b)(2) describes how long that right is retained: "at every stage of the proceedings, including sentencing, appeal, and post-conviction review." Subpart (b)(2) further provides that the same lawyer should represent the defendant through all of these stages of a criminal proceeding unless withdrawal is necessary under part (e). Part (c) establishes the procedure for explaining the right to a lawyer and putting the defendant in contact with one, part (d) describes eligibility for a lawyer at state expense under this rule, part (e) explains when a lawyer is allowed to withdraw, and part (f) describes the availability of expert, investigative, or other types of services other than a lawyer at state expense.
The specific provision at issue here, CrR 3.1(b)(2), broadly describes the various stages of a criminal proceeding to which the right to counsel attaches, "including sentencing, appeal, and post-conviction review." But the right is not limitless. We must also discern the plain meaning of CrR 3.1(b)(2), while taking into account related court rules and controlling case law.
The various stages of a criminal proceeding listed in CrR 3.1(b)(2) are more specifically covered elsewhere. For example: (1) CrR 3.1(b)(1) and CrR 3.1(c) delineate the right to counsel prior to arraignment, (2) CrR 4.1(b) outlines the right to counsel at arraignment and throughout trial, (3) CrR 7.2(b) requires notification of the right to counsel on appeal at sentencing, and (4) CrR 7.6(b) provides for counsel at probation revocation hearings.
Moreover, the right to counsel is constitutionally guaranteed at all critical stages of a criminal proceeding, including sentencing,[3] and additionally on first appeal when *93 states provide a right of appeal. State v. Rupe, 108 Wash.2d 734, 741, 743 P.2d 210 (1987) ("Sentencing is a critical stage of the proceedings, at which a defendant is constitutionally entitled to be represented by counsel."); Douglas v. California, 372 U.S. 353, 355-56, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (holding on equal protection grounds that meaningful first appeal requires appointment of counsel for indigent defendants).
In only one area have we applied the right to counsel under CrR 3.1 or CrRLJ 3.1 beyond what is constitutionally required. That stage is at the beginning, and our motivation was the preservation of evidence. See State v. Templeton, 148 Wash.2d 193, 211, 59 P.3d 632 (2002) (holding CrRLJ 3.1(b)(1) extended right to counsel beyond the constitution pursuant to rule making authority regarding preservation of evidence). Robinson argues the plain language of CrR 3.1(b)(2), "post-conviction review," requires appointment of counsel for his motions to withdraw. But it is not that simple. We know of no reported case where counsel has been appointed at the late stage of plea withdrawal following sentencing even though CrR 3.1 has been on the books since 1973.
We do allow appointment of counsel for a personal restraint petition (PRP) after an initial determination that the petition is not frivolous. RAP 16.11, .15. This makes sense given the history of rules governing postconviction relief. Originally, postconviction relief was detailed in former CrR 7.7. That rule provided that petitions for postconviction relief were to be made to the chief judge of the Court of Appeals in the district where the petitioner was convicted. Former CrR 7.7(a) (1973) (rescinded 1976). Counsel would be provided at state expense after an initial determination that the petition was not frivolous. Former CrR 7.7(b), (e). In 1976, the Rules of Appellate Procedure were adopted, and RAP 16.3-.15, the rules governing PRPs, superseded the relief previously available under former CrR 7.7. The procedure for presenting a PRP and obtaining counsel is similar to that formally provided in CrR 7.7.
We adopted CrR 7.8 in 1986. CrR 7.8 is narrower than former CrR 7.7, and allows for relief from judgment due to mistakes, inadvertence, surprise, excusable neglect, newly discovered evidence, or other irregularities, but not for errors in law.[4] Similar to former CrR 7.7, and the current RAPs governing PRPs, CrR 7.8 provides that a court may summarily deny a motion under this rule if the motion and supporting affidavits do not "establish grounds for relief." CrR 7.8(c)(2). CrR 7.8(b) provides that motions made under this rule are subject to RCW 10.73.090, .100, .130, and .140. These code provisions generally apply to collateral attacks and most notably to PRPs. This evinces a strong intention on the rule drafters' part that motions made under CrR 7.8 in superior court are subject to the same limitations, when appropriate, that apply to PRPs.[5] In further evidence of the similarity of treatment between certain kinds of relief sought under CrR 7.8 and relief sought in PRPs, CrR 7.8 allows a trial court to transfer a CrR 7.8 motion to the Court of Appeals to be treated as a PRP "to serve the ends of justice." CrR 7.8(c)(2). Thus, the trial court may serve as an initial screener, much like the chief judge of the Court of Appeals would in a PRP, prior to either transferring the motion to the Court of Appeals or evaluating the merits of a motion and possibly appointing counsel.
It is apparent, then, that CrR 3.1(b)(2) refers to the right to counsel that is either *94 already constitutionally guaranteed or provided elsewhere in the rules. The broad, sweeping language of the provision is not without limit, and must be read in context with related court rules. With respect to the right to counsel for postconviction review, we have imposed a limitation that requires, in the case of PRPs, for the chief judge of the Court of Appeals, and in the case of CrR 7.8 motions, for the superior court judge, to initially determine whether the petition or motion establishes grounds for relief. If it does not establish grounds for relief, the judge may dismiss the petition or deny the motion without a hearing on the merits. If it does establish grounds for relief, counsel may be provided if not already available.[6]
In Robinson's case, the trial court summarily denied his motions, including the motion for appointment of counsel. By not holding a hearing, the trial court effectively determined that Robinson did not establish grounds for relief. Under our above analysis, Robinson would not have been entitled to counsel. However, the Court of Appeals reversed the denial of one motion to withdraw based on newly discovered evidence. It then alternatively determined either that the right to counsel issue was moot or that any denial of counsel was harmless error. Robinson claims that the error was not harmless or moot, and that had he been provided counsel he would have been able to make a record that would show that his two pleas were part of a joint plea agreement. If that were the case, Robinson would have been entitled to withdraw both pleas under State v. Turley, 149 Wash.2d 395, 402, 69 P.3d 338 (2003) (requiring court to allow defendant to withdraw all pleas in a joint plea agreement when one is allowed).
Because the asserted error is a violation of a court rule (rather than a constitutional violation), it is governed by the harmless error test. Templeton, 148 Wash.2d at 220, 59 P.3d 632. Thus, only if the error was prejudicial in that "`within reasonable probabilities, [if] the error [had] not occurred, the outcome of the [motion] would have been materially affected'" will reversal be appropriate. Id. (second alteration in original) (quoting State v. Neal, 144 Wash.2d 600, 611, 30 P.3d 1255 (2001)). Robinson claims that "[a]pplying this test in [his] seems particularly cruel and counterproductive," because the "failure to provide [him] counsel to assist in the preparation and presentation of his motion to withdraw the guilty pleas made it impossible for him to present the requisite showing the pleas constituted a joint deal." Supp. Br. of Pet'r at 13-14. But if Robinson were entitled to counsel at all, it would not have been until after the motion to withdraw was already prepared and initially presented. This is because, as we discussed above, the trial court may summarily deny a motion under CrR 7.8 when it lacks merit, similar to dismissal of a PRP, prior to appointing counsel.
Most dispositive is that Robinson did not argue that counsel was necessary to establish that his guilty pleas were part of a joint plea agreement in front of the Court of Appeals. He also did not claim that his guilty pleas were even part of a joint plea agreement. See Br. of Appellant at 1 ("Mr. Robinson entered Alford pleas ... as part of separate plea agreements."); Appellant's Pro Se Supp. Br. at 1 (same). Rather, he asserted one basis from which his kidnapping plea should be withdrawn and one basis from which his cocaine delivery plea should be withdrawn. See Br. of Appellant at 13, 25. The Court of Appeals only reversed the cocaine delivery plea based on Robinson's newly discovered evidence argument. It did not determine whether there was a joint plea agreement because Robinson made no such argument. If counsel did not argue that the pleas were part of a joint plea agreement in front of the Court of Appeals, there is no indication that it would have done so at the trial level. *95 Because Robinson makes this argument for the first time before this court, we decline to address it. See RAP 2.5(a). Accordingly, we hold that any denial of the right to counsel was harmless because the Court of Appeals reversed the denial of the motion to withdraw the guilty plea under which Robinson may have been entitled to counsel.[7]
In one final argument, Robinson asserts that we have already decided the pertinent issue in Templeton and are now bound by that decision in the current matter. Templeton does not control the present case. In Templeton, we were called upon to determine whether CrRLJ 3.1(b)(1) exceeded the court's authority in granting a right to counsel not specifically provided for constitutionally or legislatively. 148 Wash.2d at 212, 59 P.3d 632. CrRLJ 3.1(b)(1) closely resembles CrR 3.1(b)(1).[8] We held that the right to counsel under CrRLJ 3.1(b)(1) was a proper exercise of our procedural rule making authority because it "affects and regulates the process of `taking and obtaining evidence' and preservation of such evidence. Preservation of evidence is a procedural matter." 148 Wash.2d at 217, 59 P.3d 632 (quoting State v. Fields, 85 Wash.2d 126, 128, 530 P.2d 284 (1975)).
The right to counsel presently asserted is readily distinguishable from the right to counsel at issue in Templeton. First, as noted, the Templeton decision determined the validity of a rule for courts of limited jurisdiction, not a superior court rule. Second, the rule being reviewed (CrRLJ 3.1(b)(1)) was neither the rule at issue here (CrR 3.1(b)(2)), nor its limited jurisdiction counterpart (CrRLJ 3.1(b)(2)). Finally, whereas the right at issue in Templeton was pretrial, and related to collection and preservation of evidence, the right at issue here is postjudgment, and the same rationale cannot apply.

III. CONCLUSION
Court rules must be read in their proper context. Reading CrR 3.1(b)(2) in conjunction with the rest of the court rules and controlling case law makes it evident that the right to counsel recognized in CrR 3.1(b)(2) is not limitless, and is specifically applied in various other provisions. A right to counsel may attach when making a CrR 7.8 motion after the court determines that the motion establishes grounds for relief. Here, the superior court found no grounds for relief and did not appoint counsel for the CrR 7.8 motions. On appeal, with counsel, the Court of Appeals determined the superior court was incorrect in denying one of his motions to withdraw guilty plea. Because the Court of Appeals determined a ground for relief, the superior court was incorrect in denying counsel. But the latter error was harmless in light of the Court of Appeals' subsequent reversal. We affirm the judgment of the Court of Appeals.
We concur: ALEXANDER, C.J., C. JOHNSON, BRIDGE, CHAMBERS, OWENS, JJ., and IRELAND, J.P.T.
SANDERS, J. (dissenting).
Criminal Rule for Superior Court (CrR) 3.1(b)(2) mandates a "lawyer shall be provided at every stage of the proceedings, including sentencing, appeal, and post-conviction review." If a motion to withdraw a guilty plea under CrR 7.8[1] isn't a "stage of the *96 proceedings," what is it? Moreover, such a motion may also be characterized as postconviction review, albeit postconviction review that initiates in the trial court as distinguished from personal restraint petitions which are filed in the Court of Appeals or this court. RAP 16.3(c).
The majority argues the "plain meaning" of this rule "in context" of court rules it considers "related." Majority at 92. And the majority ultimately asserts motions under CrR 7.8 must be understood by analogy to personal restraint petitions. Majority at 93-94. Notwithstanding the majority's history lesson, I find no basis to conclude the proper "context" of CrR 3.1(b)(2) shows it does not apply to CrR 7.8 motions, nor do I agree the plain meaning of this text permits such "contextual" analysis in any event.
First, CrR 3.1(b)(2) means what it says. Nothing can be clearer than to state a "lawyer shall be provided at every stage of the proceedings." While amicus Washington Association of Prosecuting Attorneys claims this is "aspirational" language, it isn't. It is not written as "intent" language, it is not written as a "goal," and it is not written in aspirational terms.[2] It is a mandate.[3]
The majority also claims there are more specific attorney provision requirements in other court rules. True, the Rules of Appellate Procedure (RAPs) provide more specific guidance for the provision of attorneys in personal restraint petitions (PRPs). And it is hardly surprising similar provisions existed in the predecessor rule governing relief similar to PRPs, former CrR 7.7 (rescinded 1976).
However, we are not dealing with the RAPs governing PRPs or the predecessor rule CrR 7.7. We are dealing with CrR 7.8.
CrR 7.8 has no predecessor rule. It was not derived from CrR 7.7. CrR 7.8 was adopted ten years after CrR 7.7 was rescinded and the RAPs governing PRPs adopted. In 1986, CrR 7.8 was adopted by this court sui generis.
The majority mistakenly compares CrR 7.8 to former CrR 7.7 without reason for its analogy. While the majority has clearly shown that the current RAPs governing PRPs include similar attorney-appointment provisions to prior CrR 7.7, it has not demonstrated any link between CrR 7.8 and the prior "post-conviction" rule.
Nor does the majority offer any reason why CrR 7.8 motions are not governed by the requirements of CrR 3.1(b)(2). Unlike the RAP provisions governing PRPs or prior CrR 7.7, CrR 7.8 contains no specific attorney-appointment provisions. Motions under CrR 7.8 are clearly governed by the general requirements of CrR 3.1(b)(2).
Since CrR 3.1(b)(2) applies, the State makes two arguments against CrR 3.1(b)(2) itself. The State claims that we do not have the authority to promulgate the rule and that the rule conflicts with RCW 10.73.150. Neither claim has merit.
Binding precedent compels me to conclude we have the authority to promulgate CrR 3.1(b)(2). As a general rule, this court has the inherent power to proscribe rules of procedure and practice. State v. Templeton, 148 Wash.2d 193, 212, 59 P.3d 632 (2002).

*97 "Substantive law prescribes norms for societal conduct and punishments for violations thereof. It thus creates, defines, and regulates primary rights. In contrast, practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated."
Id. at 213, 59 P.3d 632 (quoting State v. Smith, 84 Wash.2d 498, 501, 527 P.2d 674 (1974)).
"[T]he right to counsel established by court rule is a `procedural' matter promulgated under this court's rule-making authority." Id. at 216, 59 P.3d 632. The provision of an attorney is the quintessential procedural right,[4] the ultimate guardian of the substantive constitutional rights guaranteed to all criminal defendants, and thus CrR 3.1(b)(2) is well within this court's inherent power.
Even if within this court's power, the State alternatively claims CrR 3.1(b)(2) conflicts with RCW 10.73.150. That statute defines when the legislature requires counsel for indigent defendants. However nothing in that statute purports to limit this court's ability to promulgate rules that provide for counsel in additional circumstances nor could the legislature impinge upon the inherent power of this court to make rules on matters of procedure and process without violating separation of powers.[5] And it is this court's duty to construe statutes so as to avoid constitutional infirmities. State ex rel. Faulk v. CSG Job Ctr., 117 Wash.2d 493, 500, 816 P.2d 725 (1991).
The State then contends even if it was error to not appoint counsel, the error was harmless. All parties cite the general maxim that violations of court rules are subject to harmless error analysis. Templeton, 148 Wash.2d at 220, 59 P.3d 632; State v. Jaquez, 105 Wash.App. 699, 716, 20 P.3d 1035 (2001).
Yet I have a very hard time discerning why the outright unconstitutional denial of an attorney is a structural error not subject to harmless error consideration, but denial of a rule-entitled attorney is. The United States Supreme Court has concluded that the denial of counsel when required by the Constitution is "structural error" and is not subject to harmless error analysis in the first instance:
One of those violations, involved in Gideon v. Wainwright, was the total deprivation of the right to counsel at trial.... These are structural defects in the constitution of the trial mechanism, which defy analysis by "harmless-error" standards. The entire conduct of the trial from beginning to end is obviously affected by the absence of counsel for a criminal defendant....
Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (citation omitted).
The interests are the same. Indeed, when Templeton applied a harmless error analysis it relied on a case analyzing whether evidentiary error was harmless, not a structural error like the right to counsel. Templeton, 148 Wash.2d at 220 n. 126, 59 P.3d 632 (citing State v. Neal, 144 Wash.2d 600, 611, 30 P.3d 1255 (2001)). Similarly, Jaquez, 105 Wash.App. at 716, 20 P.3d 1035, and the case upon which Jaquez relied, State v. Greer, 62 Wash.App. 779, 790 n. 4, 815 P.2d 295 (1991), contains no analysis of why denial of the right to counsel under court rules should be treated any differently than the unconstitutional denial of counsel.
Moreover, in this context the failure to provide an attorney as required by the court *98 rules can never be harmless under the harmless error test. The standard is whether "`within reasonable probabilities, ... [if] the error [had] not occurred, the outcome of the trial would have been materially affected.'" Templeton, 148 Wash.2d at 220, 59 P.3d 632 (second alteration in original) (quoting Neal, 144 Wash.2d at 611, 30 P.3d 1255).
Where the analysis of error which allegedly occurred at trial or plea is required, a trained legal mind is necessary. A layman cannot effectively determine whether certain errors occurred or effectively present legal analysis of such errors to the court for correction.[6] We can never know what additional valid claims or persuasive argument an attorney could have made. Thus, I would opine denial of an appointed attorney in a situation requiring a lawyer's analysis and a lawyer's ability to present legal arguments can never be harmless. There is always a "reasonable probability" that an attorney could have identified an issue or presented an argument that would have swayed the trial court, which motion would have been within the trial court's discretion to grant under CrR 7.8.[7]
Indeed, the requirement for an attorney's specialized knowledge and training is so vital that where appointment of counsel is required by the constitution, "an outright denial of counsel is conclusively presumed to be prejudicial." City of Seattle v. Ratliff, 100 Wash.2d 212, 219, 667 P.2d 630 (1983).
I dissent.
MADSEN, J., concurs.
NOTES
[1] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[2] It is unclear from the record when Robinson's prior counsel stopped representing him. Although Robinson was represented on his first appeal by counsel, he moved for the appointment of counsel for withdrawal of his pleas before a decision in his first appeal was reached. The trial court and the State made no mention of that fact (Robinson might still have been represented) at the proceeding where the trial court summarily dismissed Robinson's CrR 7.8 and request for counsel motions. The State did, however, make mention of this fact when Robinson was appointed counsel for his appeal of those motions:

MS. KAHOLOKULA: Essentially, I guess he is asking that this court appoint counsel to represent him on appeal....
....
[I]t's kind of odd that he has a lawyer already. I know he does not want Mr. Tario to represent him, however.... I think what the court typically would do is appoint counsel in such a case.
Verbatim Report of Proceedings (March 21, 2002) at 4.
[3] CrRLJ 3.1 was adopted in 1987, and is similar to both CrR 3.1 and former JCrR 2.11 (retitled CrRLJ 1987). The Washington State Bar Association task force on Rules for Courts of Limited Jurisdiction "extensively revised" subsection (b)(2), however, "to state simply that a lawyer shall be provided at `every critical stage of the proceedings.'" 4B KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE, CrRLJ 3.1, task force cmt. at 450 (6th ed.2002). The task force agreed that the inclusion of appeal and postconviction review was "misplaced" in both CrR 3.1 and JCrR 2.11, presumably because the task force did not consider them to be "critical stages" of a criminal proceeding. Id. In contrast, CrR 3.1(b)(2) has not been amended since its adoption in 1973.
[4] Relief for errors of law must be sought under CrR 7.5 (motion for a new trial), by an appeal, or a PRP.
[5] RCW 10.73.150, regarding the right to counsel on collateral attack, was not enacted until 1995, after CrR 7.8 was last amended.
[6] In Robinson's case, it is unclear whether he still had counsel at the time he filed his pro se motions to withdraw and for appointment of counsel. See note 2, supra.

It is true that CrR 7.8 does not explicitly state when, if ever, counsel will be provided when motions are made pursuant to this rule. However, CrR 7.8(b) requires that motions be "subject" to the limitations found in the statutes that also govern PRPs. We thus interpret CrR 7.8 to provide counsel after an initial determination has been made that the motion is not frivolous much like the procedure used to appoint counsel in PRPs.
[7] It is important to note that Robinson sought counsel not for withdrawal of his pleas prior to sentencing, but rather postjudgment. Were he to seek withdrawal prior to judgment, pursuant to CrR 4.2(f), he would arguably still be entitled to counsel constitutionally because there is a right to counsel through sentencing. Rupe, 108 Wash.2d at 741, 743 P.2d 210. Instead, because Robinson tried to withdraw his pleas after judgment, CrR 4.2(f) directs that his motion be treated as a motion for relief from judgment or order under CrR 7.8. The right to counsel in the latter instance is not constitutional and attaches only under the procedures we have outlined above.
[8] CrRLJ 3.1(b)(1) has the term "has been arrested" where CrR 3.1(b)(1) uses "taken into custody." This distinction is not important in the present manner.
[1] CrR 7.8(b) provides:

On motion and upon such terms as are just, the court may relieve a party from a final judgment, order, or proceeding for the following reasons:
(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;
(2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 7.5;
(3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
(4) The judgment is void; or
(5) Any other reason justifying relief from the operation of the judgment.
The motion shall be made within a reasonable time and for reasons (1) and (2) not more than 1 year after the judgment, order, or proceeding was entered or taken, and is further subject to RCW 10 .73.090, .100, .130, and .140. A motion under section (b) does not affect the finality of the judgment or suspend its operation.
[2] I note that the State did not view this rule as "aspirational" in front of the Court of Appeals: "As Robinson correctly observes, CrR 3.1(b)(2) appears to expand the right to counsel beyond both statutory and constitutional requirements." Br. of Resp't at 13.
[3] I note too that while the issue of whether there is a constitutional right to counsel in a CrR 7.8 motion has been addressed by the Court of Appeals in State v. Winston, 105 Wash.App. 318, 19 P.3d 495 (2001), whether CrR 3.1(b)(2) provides a right to counsel in preparing such a motion is a matter of first impression.
[4] City of Richland v. Kiehl, 87 Wash.App. 418, 422, 942 P.2d 988 (1997), notwithstanding. If Kiehl is read to state that all mechanisms requiring appointment of attorneys, whether under the constitution, statute, or court rule, create "substantive" rather than "procedural" rights, then Kiehl erred. The provision of an attorney is important precisely to make trial and appellate procedures function correctly, and to safeguard fundamental substantive rights, such as the right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution.
[5] Preemption arises when the legislature has expressed its intent to preempt the field or that intent is manifest from necessary implication. HJS Dev., Inc. v. Pierce County ex rel. Dep't of Planning & Land Serv., 148 Wash.2d 451, 477, 61 P.3d 1141 (2003). Nothing in the statute expresses intent to preempt court rules, and no necessary implication to exclude other co-equal branches of government from acting in matters of joint authority could be derived from one branch acting in a manner that does not conflict with, but rather complements, the other branch's actions.
[6] As the United States Supreme Court said in the seminal Gideon case:

From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him. A defendant's need for a lawyer is nowhere better stated than in the moving words of Mr. Justice Sutherland in Powell v. Alabama:
"The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law."
Gideon v. Wainwright, 372 U.S. 335, 344-45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (quoting Powell v. Alabama, 287 U.S. 45, 68, 53 S.Ct. 55, 77 L.Ed. 158 (1932)).
[7] "A trial court's decision on a motion to vacate a judgment [under CrR 7.8] is reviewed on an abuse of discretion standard." State v. Hardesty, 129 Wash.2d 303, 317, 915 P.2d 1080 (1996).