FILED
COURT OF APPEALS
DIVISION II

2015 MAY -5 AM 9: 26

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44949-8-II |
| Respondent, | |
| v. | |
| MARK SCOTT MACY, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. – Mark Scott Macy filed a pro se CrR 7.8 motion to withdraw his guilty plea to second degree assault and felony harassment, which motion the trial court denied. Macy appeals, asserting that the trial court erred by denying his motion without first appointing him counsel. In his statement of additional grounds (SAG) for review, Macy raises several claims of ineffective assistance of counsel, but all of his claims refer to matters outside the record on appeal. We affirm.

## FACTS

On October 13, 2011, the State charged Macy with one count of second degree assault, with special allegations of domestic violence and sexual motivation, and one count of felony harassment, with a special allegation of domestic violence. On November 16, 2011, Macy pleaded guilty to both charges under *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L.

Ed. 2d 162 (1970) and *State v. Newton*, 87 Wn.2d 363, 552 P.2d 682 (1976). Pursuant to his guilty plea agreement, Macy agreed that the trial court could review the police reports to establish a factual basis for his crimes.

According to the police reports, Bremerton Police officers went to Macy's residence on September 15, 2011 in response to a call from a female who was heard crying and asking for assistance. The female caller stated that she could not speak freely and asked for police to be sent in a hurry. When the officers arrived at Macy's residence, Officer Matthew Thuring looked through a large window next to the front door and saw Macy holding onto a female. Thuring also saw what appeared to be areas of fresh blood on white bed sheets.

When Officer Hughes[1] knocked on the front door, Macy answered and asked the officers, "[W]hy are you here?" in what Thuring described as a mocking tone. Clerk's Papers (CP) at 7. Hughes told Macy that the officers were responding to a 911 call; Macy responded that nothing was happening at the house. When Hughes told Macy that he needed to talk with the female, Macy told him that "she did not have anything to say." CP at 7. As Hughes was talking with Macy, the victim motioned to Thuring that she had been hit in the face and showed him blood covered tissues that she was holding.

Hughes told Macy that the officers needed to enter the residence to speak with the victim, to which Macy responded, "[T]his is my house [and] you don't need to come in." CP at 7. Thuring told Macy that the officers needed to enter the residence to see if anyone was hurt, and Macy stated that no one was hurt. Thuring asked Macy whether anyone was bleeding; Macy stated that no one was bleeding and then asked Thuring why he would ask that question. When

---

[1] The police report does not provide Officer Hughes's first name.

2

Thuring told Macy that he was entering the residence to speak with the victim, Macy blocked the doorway with his body. Thuring eventually entered the residence and spoke with the victim.

When Thuring asked the victim about her injuries, the victim said, "[Macy] can't know that I called you or he will beat me worse." CP at 7. Thuring saw that the victim had a swollen nose that was turning purple and had two black eyes. Macy yelled that the victim was not hurt and glared at her in an intimidating manner. The officers arrested Macy and removed him from the residence.

After Macy was placed outside the residence, the victim told Thuring that Macy was drunk and trying to force her to have sex with him. She stated that she tried to ignore Macy's advances, but he became enraged and threatened to kill her and throw her in a river. The victim said that Macy hit her in the face and left breast before telling her to clean herself up. She stated that after Macy left the room, she called 911 on her cell phone and hid the phone in a nearby dresser. The victim told Thuring that "he was just about to rape me when you knocked on the door." CP at 8. She also told Thuring that Macy had assaulted her in January 2011, which assault caused her to have two broken ribs and a cracked sternum. While the victim was speaking to Thuring, Macy yelled to the victim that he would be out of jail soon and would return home.

The trial court accepted Macy's *Alford/Newton* plea on November 16, 2011, finding that there was a factual basis for the plea and that the plea was knowingly, intelligently and voluntarily made. A sentencing hearing was scheduled for December 15, 2011. At the December 15 hearing, Macy stated that he wanted to withdraw his guilty plea; the trial court appointed additional counsel to advise Macy about withdrawing his guilty plea. At a December

29, 2011 status hearing, Macy stated that he no longer wanted to withdraw his guilty plea. Macy again stated that he wanted to withdraw his guilty plea at a January 23, 2012 sentencing hearing, and the trial court again appointed him counsel to advise him regarding the withdrawal of his guilty plea. Macy again abandoned his wish to withdraw his guilty plea and, on February 3, 2012, the trial court imposed its sentence.

On January 31, 2013, Macy filed a pro se CrR 7.8 motion to withdraw his guilty plea. Macy's motion to withdraw his guilty plea asserted that (1) there was an insufficient factual basis to accept his guilty plea because the victim's statements in the police reports were inadmissible hearsay and because the victim recently recanted her statements, (2) the State improperly threatened to charge him with more serious crimes if he did not agree to plead guilty, and (3) his counsel was ineffective for failing to conduct an adequate investigation. Macy attached to his motion an affidavit from the victim, in which the victim stated that on the night of the incident (1) she had been intoxicated while giving her statement to the police, (2) she had tripped and fallen into a wall causing her nose to bleed, and (3) Macy had not made any sexual advances toward her.

The trial court held a hearing on Macy's motion on March 8, 2013. At the March 8 hearing, the trial court stated that it would need to schedule a "fact-finding hearing on the issue of whether or not there was a sufficient factual basis for the plea and whether or not [defense counsel] made a reasonable investigation." Report of Proceedings (RP) (Mar. 8, 2013) at 5. At the April 26 fact-finding hearing, Macy requested that the trial court appoint him counsel. The trial court told Macy, "I'm not obliged to appoint a lawyer for you . . . for a post-trial proceeding

unless I conclude that your motion is meritorious." RP (Apr. 26, 2013) at 3. Macy again requested the appointment of counsel, and the trial court stated:

> I'm not prepared to say that your motion is meritorious at this point. If there's further evidence adduced, maybe I will change my mind. But at this point, I don't see any merit to your motion.

RP (Apr. 26, 2013) at 5. The trial court then asked Macy if he wanted to call any witnesses to testify at the hearing. Macy stated that he wanted to subpoena the recanting victim to testify, and the trial court responded that he should have subpoenaed her to testify prior to the hearing. Macy then called his father who testified that the victim was under the influence of alcohol on the night of the incident. The trial court denied Macy's motion to withdraw his guilty plea, stating:

> Mr. Macy, your motion to withdraw your guilty plea is denied. There is a factual basis in the record to support your guilty plea. The fact that a witness, even a victim witness, recants—if, in fact, she did recant—but even if she did, that is not a basis for withdrawing your guilty plea. Complaining witnesses recant all the time. And there's no more basis for believing her recantation now than her original testimony.
>
> I see no basis. I see nothing in the file that the prosecuting attorney's office overstepped its bound. It's completely normal and proper to charge you—to threaten to charge you with other additional more serious crimes if you do not plead guilty. I do not see any basis in the record that the attorneys in your case committed any form of malpractice or were otherwise insufficient in their performance of their duties to you. It is not an involuntary plea to plead guilty because you believe the prosecutor will charge you with more significantly serious crimes if you do not do so.
>
> For those reasons, I am denying your motion to withdraw your plea of guilty and your motion for a new trial.

RP (Apr. 26, 2013) at 11. After the trial court announced its ruling, the following exchange took place:

> [Macy]: So is there another action that I can go for now?
> [Trial court]: I can't give you legal advice, sir.
> [Macy]: Can I get an attorney? I mean, can I get an attorney while I am here?
> [Trial court]: If you file a motion that has merit, I'm authorized, in my discretion, to appoint an attorney to you.
> [Macy]: Yes, sir.

[Trial court]: This motion had no merit.

RP (Apr. 26, 2013) at 12. The trial court later entered a written order denying Macy's motion to withdraw his guilty plea. Macy appeals from the order denying his motion to withdraw his guilty plea.

## ANALYSIS

### I. CrR 7.8 MOTION TO WITHDRAW GUILTY PLEA

Macy contends that the trial court erred by denying his CrR 7.8 motion to withdraw his guilty plea by failing to appoint him counsel before ruling on his motion. We disagree.

We note at the outset of our analysis that there is no constitutional right to counsel in a post-conviction CrR 7.8 motion to withdraw a guilty plea. *See, e.g.*, *State v. Forest*, 125 Wn. App. 702, 707, 105 P.3d 1045 (2005) ("[C]riminal defendant has no constitutional right to counsel in post-conviction proceedings other than the first direct appeal of right."). However, CrR 3.1(b)(2) provides in relevant part that "[a] lawyer shall be provided at every stage of the proceedings, including . . . post-conviction review." In *State v. Robinson*, 153 Wn.2d 689, 696, 107 P.3d 90 (2005), our Supreme Court held that "CrR 3.1(b)(2) refers to the right to counsel that is either already constitutionally guaranteed or provided elsewhere in the rules." Regarding the right to counsel in a post-conviction motion to withdraw a guilty plea, the *Robinson* court held that the procedure for appointing counsel for a CrR 7.8 motion is similar to the procedure for appointing counsel for a personal restraint petition (PRP):

> The broad, sweeping language of [CrR 3.1(b)(2)] is not without limit, and must be read in context with related court rules. With respect to the right to counsel for postconviction review, we have imposed a limitation that requires, in the case of PRPs, for the chief judge of the Court of Appeals, and in the case of CrR 7.8 motions, for the superior court judge, to initially determine whether the petition or motion establishes grounds for relief. If it does not establish grounds for relief, the

> judge may dismiss the petition or deny the motion without a hearing on the merits. If it does establish grounds for relief, counsel may be provided if not already available.

153 Wn.2d at 696. In *Robinson*, our Supreme Court held that the defendant was not entitled to counsel for his CrR 7.8 motion because "[b]y not holding a hearing, the trial court effectively determined that Robinson did not establish grounds for relief." 153 Wn.2d at 696-97.

Macy argues that he was entitled to counsel for his CrR 7.8 motion because, unlike in *Robinson*, here the trial court held a fact-finding hearing to determine whether his CrR 7.8 motion was meritorious. In other words, Macy argues that once the trial court decided to conduct a fact-finding hearing on his CrR 7.8 motion, he was entitled to the appointment of counsel at public expense under CrR 3.1(b)(2). But *Robinson* held that the triggering event allowing for the appointment of counsel at public expense in a post-conviction proceeding is the trial court's initial determination that the defendant's CrR 7.8 motion establishes grounds for relief. 153 Wn.2d at 696. And here the trial court made clear on the record prior to the fact-finding hearing that it did not find Macy's CrR 7.8 motion had established grounds for relief, stating, "I'm not obliged to appoint a lawyer for you . . . for a post-trial proceeding unless I conclude that your motion is meritorious." RP (Apr. 26, 2013) at 3. The trial court further stated prior to the fact-finding hearing, "I'm not prepared to say that your motion is meritorious at this point. If there's further evidence adduced, maybe I will change my mind. But at this point, I don't see any merit to your motion." RP (Apr. 26, 2013) at 5. Because the trial court did not determine that Macy's CrR 7.8 motion had established grounds for relief prior to the fact-finding hearing, it did not err by denying Macy request to appoint him counsel for the hearing.

Although the *Robinson* court stated that a trial court's summary denial of a CrR 7.8 motion without conducting a fact-finding hearing equates with a determination that the motion was frivolous or had failed to establish grounds for relief, *Robinson* does not require a trial court to make this determination without the benefit of a fact-finding hearing. 153 Wn.2d at 696-97. Accordingly, under *Robinson*, the trial court did not err by denying Macy's CrR 7.8 motion without first appointing him counsel to argue the motion.[2]

## II. SAG

Macy raises several claims of ineffective assistance of counsel in his SAG, but we cannot address those claims in this direct appeal because they all refer to matters outside the trial record.[3] *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) ("If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the

---

[2] We note that Macy's CrR 7.8 motion did not establish grounds for relief based on the attached victim's recantation because the trial court did not find that the victim's recantation was credible. *See State v. Scott*, 150 Wn. App. 281, 294, 207 P.3d 495 (2009) (Before considering a defendant's motion for a new trial based on a victim's recantation, the trial court must determine whether the recantation is credible). We need not address Macy's contention that appointed counsel would have known to subpoena the victim to testify at the fact-finding hearing in order to present evidence of her credibility because we have held that Macy was not entitled to the appointment of counsel to represent him at the fact-finding hearing.

[3] For example, Macy argues in his SAG that counsel was ineffective for (1) failing to present to the trial court his written statements describing his version of the events occurring on September 15, 2011, (2) pressuring him to accept the State's guilty plea offer, (3) failing to adequately communicate with him, and (4) failing to show him the State's evidence against him. There is nothing in the trial record to support these claims.

No. 44949-8-II

appropriate means of doing so is through a personal restraint petition."). We affirm the trial court's denial of Macy's pro se CrR 7.8 motion to withdraw his guilty plea.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Johanson, C.J.

Melnick, J.

9