**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>            Respondent,<br><br>        v.<br><br>CHRISTOPHER MICHAEL SEAVOY,<br><br>            Appellant. | DIVISION ONE<br><br>No. 79607-1-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — Christopher Michael Seavoy was convicted of child molestation in the first degree and rape of a child in the first degree. On appeal, he contends that his counsel's representation during his sentencing was constitutionally deficient, and that this substandard representation resulted in the sentencing court rejecting his request to be sentenced under a special sex offender sentencing alternative (SSOSA). Because Seavoy fails to show that he was prejudiced by his counsel's performance, we affirm.

I

From August 2011 through October 2014, Seavoy sexually abused P.K., his then-girlfriend's daughter. At the time, P.K. was between five and eight years old.

After learning about child abuse in school, P.K. reported what she had endured to her teacher. The school referred the matter to Child Protective Services, which then referred it to the Snohomish County Sheriff.

When interviewed by a detective, P.K. asserted that Seavoy had touched her breasts and genitals. Seavoy had also made P.K. manually stimulate his penis until he ejaculated. P.K. reported that this had happened many times between 2011 and 2014. P.K. also reported that Seavoy once began to perform oral sex on her, but that he stopped after P.K. asked him to quit.

The State charged Seavoy with child molestation in the first degree and rape of a child in the first degree. He agreed to forego a jury trial in favor of a stipulated bench trial on documentary evidence. This evidence included a pair of statements in which Seavoy admitted that he had engaged in sexual contact and sexual intercourse with P.K. The trial court found Seavoy guilty of both offenses. Seavoy then sought a SSOSA, which would have significantly reduced the amount of time that he would be incarcerated.

At Seavoy's sentencing hearing, P.K.'s mother addressed the court. She spoke about the harm Seavoy had done to her child and said, "I don't think the SSOSA is appropriate at all. I want justice served. . . . [I]f you give him a SSOSA it says that his comfort and his new life is more important than my daughter's well-being, and how my daughter is going to grow up."

During his allocution, Seavoy expressed his regret for what he had done and his belief that it was important for him to take responsibility for his actions. However, he also stated that during the time period when he molested P.K., he

was "battling a drug addiction and methamphetamines and coming out of steroid use."

Having heard these and other statements, the superior court denied Seavoy's request for a SSOSA. The court explained its decision, noting first that Seavoy's examination report did not contain his own version of the facts, rendering it statutorily deficient. The court also expressed concerns about other sections of the report that, while not statutorily deficient, could have contained additional relevant information, particularly regarding Seavoy's polygraph examination.

The court further explained that "even if this report met the statutory criteria, I would find that a SSOSA in this case is not appropriate for a variety of different reasons." It noted that Seavoy had linked his abuse of P.K. to his drug addiction in his statement to the court. The court observed that this blame shifting was in keeping with what the examiner's report noted about Seavoy's personality type: that people with it "tend[] to blame others or the environment for their problems." The report also noted that Seavoy had what the court characterized as "boundary and judgement issues related to sexual activity . . . regardless of the abuse issues." These factors, when considered alongside the fact that the abuse "took place . . . over the protracted period of time and the number of different types of instances that were referenced in the documentary evidence," led the court to find that "the risk to the community would be too substantial to permit the defendant to be granted a SSOSA."

Finally, the court observed that P.K.'s mother ardently opposed granting Seavoy the SSOSA. The judge explained that "the statute is clear" that a judge should give the victim's opinion as to whether a SSOSA should be granted "the most, the greatest weight." Because the statute also provided that the mother was herself a victim for sentencing purposes, the court gave the greatest weight to her opinion.

The court summarized its decision by stating:

> [Seavoy] abused his position of trust with this young child over a long period of time. He acted on impulse consistent with the personality issues addressed. The incidents themselves did not stop of his own volition but because the relationship ended. As a result of that, even if the report satisfied the statutory requirements, I would not grant the request for the SSOSA.

The court then sentenced Seavoy to serve 78 months of confinement with a lifetime of community custody for the child molestation conviction and 140 months of confinement with a lifetime of community custody for the rape of a child conviction, with the sentences to be served concurrently. These represented "intermediate" sentences within the standard sentencing range.

Seavoy appeals.

II

Seavoy contends that he was denied his constitutional right to effective assistance of counsel during sentencing. This is so, Seavoy avers, because his counsel failed to file necessary documentation that would have supported his request for a SSOSA. We reject this contention. Seavoy cannot prove that he suffered prejudice from his counsel's failure to file additional documentation; the

4

court plainly stated that it based its decision on factors that the provision of the missing documentation would not have altered.

Both the United States Constitution and the Washington State Constitution guarantee criminal defendants the assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art I, § 22. The United States Supreme Court has recognized that the guarantee of assistance of counsel is, in fact, a "'right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). This right extends to all critical stages of a criminal proceeding, including sentencing. State v. Robinson, 153 Wn.2d 689, 694, 107 P.3d 90 (2005).

Contentions of constitutionally ineffective assistance of counsel present mixed questions of law and fact that we review de novo. State v. A.N.J, 168 Wn.2d 91, 109, 225 P.3d 956 (2010). We base our determination on the record established in the superior court. In re Pers. Restraint of Hutchinson, 147 Wn.2d 197, 206, 53 P.3d 17 (2002). "[T]he defendant must show both (1) deficient performance and (2) resulting prejudice to prevail on an ineffective assistance claim." State v. Estes, 188 Wn.2d 450, 457-58, 395 P.3d 1045 (2017) (citing Strickland, 466 U.S. at 687).

While courts often determine whether a defense attorney's performance was deficient before addressing prejudice,

> there is no reason for a court deciding an ineffective assistance
> claim to approach the inquiry in [that] order or even to address both
> components of the inquiry if the defendant makes an insufficient
> showing on one. In particular, a court need not determine whether

5

> counsel's performance was deficient before examining the
> prejudice suffered by the defendant as a result of the alleged
> deficiencies. The object of an ineffectiveness claim is not to grade
> counsel's performance. If it is easier to dispose of an
> ineffectiveness claim on the ground of lack of sufficient prejudice,
> which we expect will often be so, that course should be followed.
> Courts should strive to ensure that ineffectiveness claims not
> become so burdensome to defense counsel that the entire criminal
> justice system suffers as a result.

Strickland, 466 U.S. at 697.

To establish that any errors made by his counsel were prejudicial, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. Instead, Seavoy must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987) (quoting Strickland, 466 U.S. at 694).

> "A reasonable probability is a probability sufficient to undermine
> confidence in the outcome." Strickland, 466 U.S. at 694; Thomas,
> 109 Wn.2d at 226; [State v. ]Garrett, 124 Wn.2d [504,] 519[, 881
> P.2d 185 (1994)]. In assessing prejudice, "a court should presume,
> absent challenge to the judgment on grounds of evidentiary
> insufficiency, that the judge or jury acted according to the law" and
> must "exclude the possibility of arbitrariness, whimsy, caprice,
> 'nullification' and the like." Strickland, 466 U.S. at 694-95.

State v. Grier, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011).

A SSOSA allows a court to conditionally suspend the full sentence of a qualifying sexual offender in favor of the defendant undergoing treatment, serving a much shorter term of confinement, and serving the remaining sentence in community custody. RCW 9.94A.670(4), (5). To be eligible for a SSOSA, the defendant must have been convicted of a qualifying sex offense with a sentence

range that allows for confinement for less than 11 years. RCW 9.94A.670(2)(a), (f). The defendant must have had an established relationship with the victim, and the offense must not have resulted in substantial bodily harm to the victim. RCW 9.94A.670(2)(d), (e). The defendant also must not have any prior convictions for sex offenses or recent adult convictions for violent offenses. RCW 9.94A.670(2)(b), (c).

If a defendant is eligible for a SSOSA, as all parties agree Seavoy was, the court "may order an examination to determine whether the offender is amenable to treatment." RCW 9.94A.670(3). The resulting examination report must contain, among other information, the offender's version of the facts, "[a]n assessment of problems in addition to alleged deviant behaviors," and an appraisal of the "offender's amenability to treatment and relative risk to the community." RCW 9.94A.670(3)(a)(iii), (b).

> After receipt of the reports, the court shall consider whether the offender and the community will benefit from use of this alternative, consider whether the alternative is too lenient in light of the extent and circumstances of the offense, consider whether the offender has victims in addition to the victim of the offense, consider whether the offender is amenable to treatment, consider the risk the offender would present to the community, to the victim, or to persons of similar age and circumstances as the victim, and consider the victim's opinion whether the offender should receive a treatment disposition under this section.

RCW 9.94A.670(4).

The statute further requires that the court "give great weight to the victim's opinion whether the offender should receive a treatment disposition under this section." RCW 9.94A.670(4). It also provides that the parent of a minor child

7

victim is herself a victim for the purposes of RCW 9.94A.670. RCW 9.94A.670(1)(c).

The sentencing court herein plainly stated its reasons for denying Seavoy a SSOSA: P.K.'s mother's expressed wishes, Seavoy's underlying personality issues—which suggested he posed a danger to the community—and the examination report's statutory inadequacies. Among these, the court acknowledged that the statute required it to place "the most, the greatest weight" on P.K.'s mother's stated opinion that Seavoy should not receive the SSOSA.

The court then stated that it would have made the same decision "even if the report satisfied the statutory requirements." Because we presume that the judge acted according to the law, and we exclude the possibility of arbitrariness or caprice, we take the court at its word that a more complete report would not have changed the outcome.[1] Grier, 171 Wn.2d at 34 (quoting Strickland, 466 U.S. at 694-95).

Seavoy does not establish that he was prejudiced by the fact that his counsel did not provide more complete documentation.[2] Thus, his contention that he was deprived of his right to constitutionally effective assistance of counsel fails. Estes, 188 Wn.2d at 457-58 (citing Strickland, 466 U.S. at 687).

---

[1] For the same reasons, we also reject Seavoy's contentions that his counsel's failure to supply the court with a complete polygraph report or "any other documentary support for the SSOSA recommendation" prejudiced him. The court plainly stated that, as required by statute, it gave greatest weight to P.K.'s mother's opinion that the request for a SSOSA should be rejected and stated that rectifying documentary deficiencies would not have changed the outcome.

[2] Because Seavoy has not established that he suffered prejudice, we do not consider whether his counsel's conduct constituted constitutionally deficient performance. Strickland, 466 U.S. at 697.

Affirmed.

_____
Dwyer, J.

WE CONCUR:

_____       _____
Brennan, J                    Verellen, J