**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55983-8-II |
| Respondent, | |
| v. | |
| TAYLOR KHIRY DONTA HARRISON, | PUBLISHED OPINION |
| Appellant. | |

CRUSER, J. – Following an altercation with law enforcement officers, Taylor K. D. Harrison was charged with third degree assault of a law enforcement officer, obstructing a law enforcement officer, and resisting arrest. During voir dire, the State asked the venire questions regarding race and identity. The State subsequently used a peremptory strike on one of the jurors who responded to these questions. Following a GR 37 objection, the trial court permitted the State's peremptory challenge. Harrison was convicted on all counts.

Harrison appeals his convictions, arguing that the trial court erred by permitting the State to exercise the peremptory challenge because an objective observer could view race as a factor in the use of the State's challenge. We agree and hold that the trial court erred by permitting the State to exercise the peremptory challenge. Accordingly, we reverse Harrison's convictions and remand for a new trial.

No. 55983-8-II

FACTS

According to law enforcement, Harrison, a Black man, was involved in an altercation with law enforcement officers in February 2020. The State charged Harrison by amended information with one count of third degree assault of a law enforcement officer, one count of obstructing a law enforcement officer, and one count of resisting arrest. The case proceeded to a jury trial in May 2021.

During voir dire, the State asked the prospective jurors some questions about race and identity. The State specified that it did not believe Harrison's case involved race, racism, or identity, but it felt obligated to ask about those issues "because of what's happened in the news in the last year."[1] 1 Verbatim Report of Proceedings (VRP) at 204. The State then asked if any jurors felt they could not be fair to the defendant, to law enforcement, to the attorneys, or to the process of the criminal case because of race or their feelings about race.

Juror 28 responded to the State's question and said,

> I just feel because of everything on the news that it does get a little difficult, especially, you know, police officers and Black Lives Matter and all that. I just have a -- you know, I don't know if I can be fair.

*Id.* at 204-05. The State asked what juror 28 meant, and juror 28 responded,

> I'm not sure. Uh, I mean, I guess I can listen to the evidence and, you know, and try to be but it's kind of difficult I think maybe because I've been watching too much of the news and media and everything and it's -- it just gets tough.

*Id.* at 205.

The State then asked the venire,

---

[1] The State later noted that voir dire took place almost exactly one year after Minneapolis law enforcement officers killed George Floyd, a Black man, sparking widespread protests regarding racial justice and law enforcement.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55983-8-II

> The State wants to see the Defendant get a fair trial and the officers have a chance to hear [sic] their testimony heard as well, as well as all the people involved.
>
> Does anyone here feel that they can not provide that opportunity for a fair trial to the Defendant, to [law enforcement], to anyone else involved in the case?

*Id.* at 205-06. No one responded to the State's question.

The State went on to tell the prospective jurors that there would be three law enforcement witnesses and asked the venire if the races or ethnicities of the law enforcement witnesses would make a difference to anyone. Juror 5 responded that they believed race does not matter in a case.

Juror 2 responded that they would find the law enforcement testimony more credible if there was a mixture of races among the three officers. The State asked juror 2 if they were familiar with the George Floyd case. Juror 2 responded, "Of course, I'm very well informed about current events. I'm also pretty well informed and educated about history." *Id.* at 207. The State then asked if juror 2 recalled the law enforcement officers' races in George Floyd's case, and juror 2 responded that they believed there was a mixture of races. The State asked about the effect of having multiple officers of different races testify, and juror 2 stated that they "would be more skeptical of the evidence if all of the officers were Caucasian." *Id.*

The State then asked the venire if anyone else felt similarly. Juror 39 responded that they were struggling with the issue and recognized that "our system and people in our country are not treated equally and this last year has really raised that awareness." *Id.* at 208.

Juror 26 also responded, stating that Harrison was Black and "almost everybody here is white." *Id.* Juror 26 asked what people would think if the defendant was white and the whole jury was Black. Juror 26 then asked if there was some sort of effort to create a more racially diverse juror pool. The State asked juror 26 how they would describe the demographics of Clallam County,

3

No. 55983-8-II

where the alleged crime took place, and juror 26 responded that it was mostly white. The State also asked whether, if the demographics were reversed (with a white defendant and Black jury panel), they would expect the panel to treat them equally and fairly. Juror 26 stated that they would hope so and they knew that historically "the situation is really different" for Black and white people and gave the example of racial representation in prisons. *Id.* at 209. The State asked if juror 26 could be fair and objective in spite of their apparent race and Harrison's apparent race. Juror 26 responded, "I think so." *Id.* at 210.

The State then asked the venire if anyone else had "any strong feelings" on the topic of race and identity and if everyone felt they could be fair and impartial, and no one responded to these questions. *Id.* This concluded the State's questions on race and identity.

The State exercised peremptory challenges on jurors 2 and 26, without objection from Harrison. When the State attempted to use a peremptory challenge on juror 28, Harrison's attorney objected under GR 37. The trial court called for a sidebar, went off the record, and discussed the matter outside the jury's presence. When the sidebar concluded, the trial court excused juror 28. The final juror seated was juror 29.

The next day, the trial court discussed what had happened during the sidebar conducted off the record. The trial court stated that Harrison's GR 37 objection to the State's peremptory challenge was based on Harrison's attorney's perception that juror 28 "was a non-Caucasian member of a racial or ethnic minority group." *Id.* at 260. The State had responded that it brought the peremptory challenge because of statements juror 28 made during voir dire, including that juror 28 was not sure they could be fair, was mindful of current events related to the Black Lives Matter

4

No. 55983-8-II

movement, and was mindful of and potentially susceptible to news media influences regarding racial justice and fairness issues.

The trial court articulated the GR 37 test and considered the number and types of questions posed to prospective jurors, whether juror 28 was targeted with more or different questions, whether other prospective jurors provided similar answers and if they were the subjects of peremptory challenges, and whether the State's reason might be disproportionately associated with a race or ethnicity. The trial court found that the State did not specifically target juror 28 in voir dire. Instead, the State left questions open to the whole group and had individuals volunteer their own answers. According to the trial court, juror 26 was the only other prospective juror who had provided a similar answer as juror 28, and the State exercised another peremptory challenge on juror 26.[2] The trial court noted that juror 26 did not appear to be a member of a racial or ethnic minority group. The trial court also stated that an expression of distrust for law enforcement would be an invalid reason for a peremptory challenge, but the trial court did not recall juror 28 stating that they distrusted law enforcement. Rather, juror 28 "was just explaining that [they] felt [they] would have a difficult time being impartial." *Id.* at 263.

The trial court then asked Harrison's attorney to further explain his objection to the State's peremptory challenge. Harrison's attorney stated that some invalid reasons for peremptory challenges include having prior contact with law enforcement, expressing a distrust of law enforcement, or believing that law enforcement officers engage in racial profiling. Harrison's attorney argued that these reasons were "more or less" what juror 28 had expressed during voir

---

[2] As discussed above, it appears that two other jurors, jurors 2 and 39, also provided similar answers regarding race. The trial court did not mention these jurors in its analysis.

5

No. 55983-8-II

dire. *Id.* at 264. Harrison's attorney also stated that, based on his observations and recollections, he believed juror 28 was the only juror of color, though he was not 100 percent sure. The State responded that it was not certain whether juror 28 "was a member of a[n] ethnic minority," though it had "no problem with that assumption." *Id* at 265.

The trial court found that there was "no indication that race or ethnicity was a factor" for the State's peremptory challenge when viewed through the lens of an objective observer. *Id.* The trial court also found that there were no invalid reasons under GR 37(h) for the peremptory challenge.

At the conclusion of the trial, the jury found Harrison guilty on all counts. Harrison appeals his convictions.

DISCUSSION

Harrison argues that the trial court erred by permitting the State's peremptory challenge of juror 28 because an objective observer could view race as a factor in the use of the State's challenge and because the State's reason for excluding juror 28 from the venire was presumptively invalid under GR 37. We agree.

A.     LEGAL PRINCIPLES

The purpose of GR 37 is to "eliminate the unfair exclusion of potential jurors based on race or ethnicity." GR 37(a). GR 37 provides that either party or the court "may object to the use of a peremptory challenge to raise the issue of improper bias." GR 37(c). Upon objection, the party seeking to exercise a peremptory challenge must articulate their reasons for using the challenge. GR 37(d).

6

No. 55983-8-II

The trial court must then evaluate the party's reasons for the peremptory challenge in light of the totality of the circumstances. GR 37(e). Certain reasons are presumptively invalid due to being historically associated with improper discrimination in jury selection, including "expressing a distrust of law enforcement or a belief that law enforcement officers engage in racial profiling." GR 37(h)(ii). "If the court determines that an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge, then the peremptory challenge shall be denied." GR 37(e). The court is not required to find purposeful discrimination to deny the peremptory challenge. *Id.* An objective observer is one who is "aware that implicit, institutional, and unconscious biases, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in Washington State." GR 37(f).

"[T]he question of whether an objective observer could view race or ethnicity as a factor in a peremptory challenge is subject to de novo review." *State v. Listoe*, 15 Wn. App. 2d 308, 321, 475 P.3d 534 (2020). The remedy for a GR 37 violation is a new trial. *See id.* at 329.

B. ANALYSIS

Here, the State chose to ask questions about race during voir dire, and five jurors responded. Four of those jurors (jurors 2, 26, 28, and 39) responded in ways that showed an awareness of racial justice issues, including history and current events related to race and the criminal legal system.[3] The State had the opportunity to exercise peremptory challenges on three of those four jurors (jurors 2, 26, and 28), and the State exercised peremptory challenges on all three.[4]

---

[3] Juror 5 was the fifth juror who responded, but juror 5 did not indicate any awareness of racial justice issues. Harrison exercised a peremptory challenge on juror 5.

[4] The State had no opportunity to exercise a peremptory challenge on juror 39 because the seated jury only reached juror 29.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55983-8-II

The State argues that it exercised a peremptory challenge on juror 28 because the juror expressed concerns about their ability to be an impartial juror. The State's argument is specious in light of the totality of the circumstances. Although juror 28's expressions of concern about their ability to be fair was equivocal, after the State informed the jurors that it wanted Harrison to have a fair trial and directly asked if any prospective juror could not provide Harrison with the opportunity for a fair trial, no one responded. The totality of the circumstances shows that the State chose to remove every juror who exhibited an awareness of racial justice issues when a Black defendant was on trial.

Thus, even though the State's proffered reason[5] for excluding juror 28 based on the juror's mindfulness of the Black Lives Matter movement and media coverage on racial justice issues did not explicitly reference the juror's distrust of law enforcement or the belief that law enforcement officers engaged in racial profiling, this reason is nevertheless implicated by the State's peremptory challenge and is presumptively invalid under GR 37(h)(ii). The presumption of invalidity is not overcome merely because the State used different language when giving its reasons for using its challenge. *State v. Tesfasilasye*, 200 Wn.2d 345, 359, 518 P.3d 193 (2022).

Notably, the trial court appeared to have decided this issue based on its view that "there was really no indication that race or ethnicity *was* a factor when viewed through the lens of an objective observer." 1 VRP at 265-66 (emphasis added). However, the precise inquiry under GR

---

[5] We note here that we must rely on the trial court's iteration of the State's reasoning because the discussion following Harrison's GR 37 objection took place off the record. GR 37(c) provides that discussion following an objection under the rule "shall be conducted outside the presence of the panel," but it does *not* provide that this discussion should be off the record. Harrison does not argue that this trial was improperly closed without first conducting an analysis pursuant to *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995). We nevertheless caution trial courts to hold discussions following a GR 37 objection on the record.

8

No. 55983-8-II

37 is whether " 'an objective observer *could view* race or ethnicity as a factor' " in the party's use of a peremptory challenge. *Tesfasilasye*, 200 Wn.2d at 357 (emphasis added) (quoting GR 37(e)). This inquiry is inherently more likely to lead to the denial of a peremptory challenge, and the trial court is required to deny the challenge whether or not the party using the challenge was acting with a discriminatory purpose. *Id.* Here, an objective observer who is aware of implicit, institutional, and unconscious biases could view race as a factor in the State's use of a peremptory challenge to exclude juror 28 from the jury when considering the totality of the circumstances.

For these reasons, it was error for the trial court to permit the State to use a peremptory challenge on juror 28. Accordingly, we reverse Harrison's convictions and remand for a new trial.[6]

CRUSER, J.

I concur:

GLASGOW, C.J.

---

[6] Under these facts, we need not reach the issue raised by the concurrence, namely, whether GR 37 applies to the removal of any prospective juror, regardless of the juror's race, who expresses opinions while sitting on the trial of a defendant of color that protect the juror from peremptory removal under GR 37, such as distrust of law enforcement. Although the parties were not sure whether juror 28 was a person of color, the State assumed this for purposes of Harrison's objection under GR 37.

No. 55983-8-II

LEE, J. (concurring) — I agree with the majority on the outcome; however, I write separately as I am unable to subscribe to the majority's opinion equating being "mindful[] of the Black Lives Matter movement and media coverage on racial justice issues" with a "distrust of law enforcement or the belief that law enforcement officers engaged in racial profiling." Majority at 8. The same outcome can be reached by looking to language of GR 37 and the totality of the circumstances without painting with a broad brush and equating a knowledge of Black Lives Matter and media coverage on racial justice issues with a distrust of law enforcement or a belief that law enforcement engage in racial profiling.

A.      LEGAL PRINCIPLES

A trial court's GR 37 decision is reviewed de novo. *State v. Listoe*, 15 Wn. App. 2d 308, 321, 475 P.3d 534 (2020). We also review court rule interpretation de novo, and we apply canons of statutory interpretation when construing a court rule. *State v. Robinson*, 153 Wn.2d 689, 692-93, 107 P.3d 90 (2005). The plain language of a court rule controls when it is unambiguous. *Id*. at 693.

In determining the plain language of a court rule, we must examine the entire rule as well as any related rules. *Id*. When determining the plain meaning of a statute, we must not add words where the legislature chose to not include them. *State v. Yancey*, 193 Wn.2d 26, 30, 434 P.3d 518 (2019). Because we apply principles of statutory interpretation to court rule construction, we also must not add words to court rules where the rule-drafter chose to not include them. *Robinson*, 153 Wn.2d at 692; *Yancey*, 193 Wn.2d at 30.

No. 55983-8-II

B.      GR 37 INTERPRETATION AND APPLICATION

GR 37 states that the rule is meant "to eliminate the unfair exclusion of potential jurors based on race or ethnicity." GR 37(a). GR 37 does not state that the rule is meant to eliminate the unfair exclusion of potential jurors based on *the prospective juror's* race or ethnicity.

GR 37 uses similar language in the operative section of the rule and provides that "[i]f the court determines that an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge, then the peremptory challenge shall be denied." GR 37(e). Again, the rule does not specify that it applies only to *the prospective juror's* race or ethnicity, but instead refers generally to "race or ethnicity" with no limitations.

Nothing in GR 37 or any related rule states that courts should consider only the prospective juror's race or that the prospective juror must be a racial or ethnic minority for GR 37 to apply to them. Because we must not add words to court rules where the drafter chose to not include them, we should not limit the GR 37 consideration of race or ethnicity to only the prospective juror's race or ethnicity. *Yancey*, 193 Wn.2d at 30; *Robinson*, 153 Wn.2d at 692. Rather, GR 37's plain language provides that courts must consider the totality of the circumstances. GR 37(e). The totality of the circumstances includes the defendant's race or ethnicity, not just the prospective juror's race or ethnicity.

GR 37's plain language requires courts to view peremptory challenges with an awareness of institutional biases. GR 37(e), (f). It is clear that our criminal legal system perpetuates institutional biases against defendants who are racial or ethnic minorities, not just jurors. *See* Letter from Wash. State Sup. Ct. to Members of Judiciary & Legal Cmty. 2 (June 4, 2020) ("We continue to see racialized policing and the overrepresentation of black Americans in every stage

11

No. 55983-8-II

of our criminal and juvenile justice systems.").[7]  With these institutional biases in mind, we should hold that GR 37 requires courts to deny a peremptory challenge if an objective observer could, in light of the totality of the circumstances, view *the defendant's* race or ethnicity as a factor in the use of that peremptory challenge.  This interpretation is admittedly unconventional, but it reflects the plain language and ordinary meaning of GR 37.

Here, Harrison was a Black defendant.  During voir dire, the State chose to ask questions about race, and five jurors responded.  Four of those jurors (jurors 2, 26, 28, and 39) responded in ways that showed an awareness of racial justice issues, including history and current events related to race and the criminal legal system.[8]  The State had the opportunity to exercise peremptory challenges on three of those four jurors (jurors 2, 26, and 28), and the State exercised peremptory challenges on all three.[9]

The State argues that it exercised a peremptory challenge on juror 28 because the juror expressed concerns about their ability to be an impartial juror.  The State's argument is specious in light of the totality of the circumstances.

Juror 28's expressions of concern about their ability to be fair was equivocal.  In response to the State's questions, juror 28 stated:

> I just feel because of everything on the news that it does get a little difficult, especially, you know, police officers and Black Lives Matter and all that.  I just have a—you know, I don't know if I can be fair.

---

[7]  https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20News/Judiciary%20 Legal%20Community%20SIGNED%2006042020.pdf [https://perma.cc/QNT4-H5P7].

[8]  Juror 5 was the fifth juror who responded, but juror 5 did not indicate any awareness of racial justice issues.

[9]  The State had no opportunity to exercise a peremptory challenge on juror 39 because the seated jury only reached juror 29.

No. 55983-8-II

> . . . .

> . . . I'm not sure. Uh, I mean, I guess I can listen to the evidence and, you know, and try to be but it's kind of difficult I think maybe because I've been watching too much of the news and media and everything and it's—it just gets tough.

1 Verbatim Rep. of Proc. at 204-05. However, after the State informed the jurors that it wanted Harrison to have a fair trial and directly asked if any prospective juror could not provide Harrison with the opportunity for a fair trial, no one responded.

The totality of the circumstances shows that the State chose to remove every juror who exhibited an awareness of racial justice issues when a Black defendant was on trial. Thus, an objective observer who is aware of implicit, institutional, and unconscious biases could view Harrison's race as a factor in the State's use of peremptory challenges on any of those three jurors. Therefore, the trial court erred by permitting the State to exercise a peremptory challenge on juror 28. *See* GR 37(e). Accordingly, I agree with the majority to reverse Harrison's convictions and remand for a new trial.

Lee, J.