IN THE COURT OF A PPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57360-1-II |
| Respondent, | |
| v. | |
| NICHOLES JOSEPH DENHAM, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Nicholes Denham appeals his convictions of murder in the first degree of his former girlfriend Charlene Van Auken and her four-year-old daughter. Denham argues that the trial court erred in overruling his GR 37 objection to the State's preemptory challenge against juror 27 because the trial court failed to adequately apply and analyze the correct legal standard under GR 37.

We hold on de novo review that the trial court erred; an objective observer could have viewed race as a factor in the State's use of a peremptory challenge against juror 27. Accordingly, we reverse and remand this case to the trial court for a new trial.

FACTS

I.    BACKGROUND

In March 2020, the State charged Denham with two counts of aggravated murder in the first degree following the discovery of the bodies of Van Auken, Denham's former girlfriend, and her four-year-old daughter beside a pedestrian trail.

Two months later, the State amended the charges adding three counts of unlawful possession of a firearm in the first degree, burglary in the first degree, three counts of theft of a firearm, and aiming and discharging a firearm to the charges. The case proceeded to jury trial.

II.    JURY SELECTION/PEREMPTORY CHALLENGE ON JUROR 27

During voir dire, defense counsel questioned prospective jurors. The specific questions varied, but generally included asking how the jurors felt or what their reactions were upon hearing the charges. As a response, several jurors, including jurors 4, 27, 30, 32, 41, 49, 68, and 69 gave answers noting the trial as affecting not only Denham but a lot of other people. Juror 27 responded and the following exchange then took place:

> PROSPECTIVE JUROR NO. 27: I guess my initial thought that there is a lot of responsibility behind being a juror in this case.
> [DEFENSE COUNSEL]: What do you mean by that, "a lot of responsibility"? I agree. But that can mean something different to you than me or juror 26.
> PROSPECTIVE JUROR NO. 27: Well, we have the responsibility to decide somebody's fate.
> [DEFENSE COUNSEL]: Do you think a case like this impacts more than just Mr. Denham?
> PROSPECTIVE JUROR NO. 27: Yes.
> [DEFENSE COUNSEL]: All right. It impacts a whole bunch of people, right?
> PROSPECTIVE JUROR NO. 27: Right.
> [DEFENSE COUNSEL]: So when I hear you saying that this is a big deal,—
> PROSPECTIVE JUROR NO. 27: Mm-hmm.
> [DEFENSE COUNSEL]: — in your mind, is it a big deal to everybody? Mr. Denham specifically? Maybe the State? Tell me kind of what your thought is about the impact and who it would impact on a case like this.
> PROSPECTIVE JUROR NO. 27: I suppose my initial was the accused, Mr. Denham.
> [DEFENSE COUNSEL]: Why? Tell me why.
> PROSPECTIVE JUROR NO. 27: Because our decision. . . . I guess it affects multiple people, not just him. Yeah, it would affect the victims' family and. . . . But then also his future as well.
> [DEFENSE COUNSEL]: So for juror 27, I hear you saying the gravity of this is significant for a lot of people and that was your first thought was this is a big deal.
> PROSPECTIVE JUROR NO. 27: Correct.

4 Rep. of Proc. (RP) at 319-20.

Juror 4 discussed the importance of criminal cases, stating, "I just think the stakes are higher for what the outcome is." 3 RP at 153. The following exchange took place:

> [DEFENSE COUNSEL]: The stakes, right? What do you mean by that? Explain.
> . . . .
> PROSPECTIVE JUROR NO. 4: . . . [I]n a criminal case, you're looking at, you know, prison time or that sort of thing that has more of an effect on the person's life.
> . . . .
> [DEFENSE COUNSEL]: So juror 4 says the stakes are higher here. I think you are talking about for a defendant; is that right?
> PROSPECTIVE JUROR NO. 4: Yes.

3 RP at 153-54.

Other jurors also expressed that this trial would impact a lot of people, including Denham and the victims' families:

> . . . .
> PROSPECTIVE JUROR NO. 32: . . . I guess basically we're going to be looking at his side, we're going to be looking at their side . . . our decision will impact him. But it just doesn't impact him. It's going to impact everybody in the case.
> . . . .
> PROSPECTIVE JUROR NO. 41: . . . So the charges are serious and the decision that—if I am chosen to be on the jury—is also going to be serious. It's going to absolutely affect the life of your client. So these are pretty serious things. So yes, I don't know quite else how to respond. But this is a very serious thing.

4 RP at 323, 332-33.

The prosecutor had another round of voir dire, but did not ask any follow up questions to juror 27 about the comments quoted above.

After each party exercised its for cause challenges, the State exercised a peremptory challenge on juror 27, stating:

3

> The exercise of this challenge would be based on some specific responses to questions in which [they] indicated a concern that the decision here in this case would decide the fate of the defendant and expressed a lot of concern about the impact that that would have on [them]. And it was the State's interpretation of that that that could be a—it could be an implicit bias. I'm not accusing the juror of being biased, but an implicit bias towards defense.

5 RP at 650. Denham objected. The trial court then stated that following an objection under GR 37, it would determine "whether an objective observer *would view* race as an ethnicity as a factor" and requested a response from the State. 5 RP at 651 (emphasis added).

In response, the State stated its basis for the challenge as "a specific answer given to a specific question," which raised "concern about a possible underlying bias towards defense." 5 RP at 652.

The trial court issued its ruling:

> So the Court makes a determination, as I referenced, and considers circumstances, including the number and types of questions posed to the prospective juror and whether the party exercising the peremptory challenge asked significantly more questions or different questions to the prospective juror and whether there were other similar answers. *There's other factors that the Court considers.*

5 RP at 652 (emphasis added). Ultimately, the superior court "f[ound][] that the exercise of the peremptory [would] be allowed" as it did not think that "an objective observer *could view* race or ethnicity as a factor" in the use of the challenge. 5 RP at 652 (emphasis added). Juror 27 did not sit on the jury, but jurors 4 and 32 did.

III.    VERDICT AND SENTENCE

The jury convicted Denham of two counts of aggravated murder in the first degree with firearm enhancements, five counts of unlawful possession of a firearm in the first degree, three counts of theft of a firearm, one count of burglary in the first degree while armed with a firearm, and one count of unlawful discharge of a firearm. Denham was sentenced to two consecutive life

terms without the possibility of parole on the murder convictions and standard range terms on the remaining offenses. Denham appeals his convictions.

ANALYSIS

I.    PEREMPTORY CHALLENGE

Denham argues that the trial court erred by overruling his GR 37 objection to the State's peremptory challenge of juror 27. We agree.

A.    Standard of Review

The parties disagree on the standard of review applicable regarding a trial court's decision under GR 37. Denham argues that the standard is de novo. In contrast, the State argues that we should give deference to the trial court:

> Pure de novo review is not possible because this Court was not in the courtroom and did not have the ability to see the venire of Juror Number 27, did not have the ability to hear and see the tone and demeanor of particular responses of the jurors or attorneys, and was not in position to view the totality of the circumstances which would be seen by an objective observer in the courtroom.

Br. of Resp't at 51. We disagree with the State.

Although GR 37 does not expressly outline the proper appellate standard of review, we uniformly have reviewed GR 37 and other court rule interpretations de novo. *State v. Harrison*, 26 Wn. App. 2d 575, 582, 528 P.3d 849 (2023); *State v. Listoe*, 15 Wn. App. 2d 308, 321, 475 P.3d 534 (2020); *State v. Omar*, 12 Wn. App. 2d 747, 750-51, 460 P.3d 225 (2020); *see also State v. Robinson*, 153 Wn.2d 689, 693, 107 P.3d 90 (2005) (stating we review construction of a court rule de novo because it is a question of law).

The Supreme Court has not definitively decided this issue, but in *State v. Tesfasilasye*, it stated that "most courts have effectively applied de novo review because the appellate court 'stand[s] in the same position as does the trial court' in determining whether an objective observer

5

could conclude that race was a factor in the peremptory strike." 200 Wn.2d 345, 355-56, 518 P.3d 193 (2022) (quoting *State v. Jefferson*, 192 Wn.2d 225, 250, 429 P.3d 467 (2018)). In *Tesfasilasye*, the court applied a de novo standard of review because "there were no actual findings of fact and none of the trial court's determinations apparently depended on an assessment of credibility." 200 Wn.2d at 356. However, the court stated, it would "leave [the] further refinement of the standard of review open for a case that squarely presents the question based on a well-developed record." *Id*.

Like the Supreme Court, we decline to hold that de novo review applies in all circumstances in GR 37 cases. That said, just as in *Tesfasilasye*, this case does not squarely present the question based on a well-developed record. Rather, the trial court's GR 37 ruling here did not involve disputed factual findings or credibility issues that require any deference. In fact, the trial court engaged in a truncated analysis. Therefore, we follow the applicable authorities and apply a de novo standard of review of the trial court's GR 37 decision.

B.      Legal Principles

Our constitutions require a fair and impartial jury. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. The parties and the jurors themselves have the right to a trial process free from discrimination. *Powers v. Ohio*, 499 U.S. 400, 409, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991); *State v. Davis*, 141 Wn.2d 798, 824-25, 10 P.3d 977 (2000). At the heart of it, the United States Supreme Court has recognized, "[D]iscriminatory selection procedures make 'juries ready weapons for officials to oppress those accused individuals'" who are members of underrepresented populations. *Batson v. Kentucky*, 476 U.S. 79, 87 n.8, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986) (quoting *Akins v. Texas*, 325 U.S. 398, 408, 65 S. Ct. 1276, 89 L. Ed. 1692 (1945) (Murphy, J., dissenting)). It more recently wrote "'[t]he Constitution forbids striking even a single prospective

6

juror for a discriminatory purpose.'" *City of Seattle v. Erickson*, 188 Wn.2d 721, 732, 398 P.3d 1124 (2017) (alteration in original) (internal quotation marks omitted) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 478, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008)). Simply put, jurors have a right not to be excluded from a case on account of their own race or the defendant's. *Powers*, 499 U.S. at 400, 404.

Voir dire examination serves to protect the parties' rights to a fair trial by exposing possible biases, both known and unknown, on the part of potential jurors. *Kuhn v. Schnall*, 155 Wn. App. 560, 574, 228 P.3d 828 (2010). During voir dire, the court and counsel "'ask the prospective jurors questions touching their qualifications to serve as jurors in the case.'" *State v. Lupastean*, 200 Wn.2d 26, 35, 513 P.3d 781 (2022) (quoting CrRLJ 6.4(b)). Voir dire is "'conducted under oath'" and "'subject to the supervision of the court as appropriate to the facts of the case.'" *Id*. (quoting CrRLJ 6.4(b)) Voir dire has two purposes: "'discovering any basis for challenge for cause' and 'gaining knowledge to enable an intelligent exercise of peremptory challenges.'" *Id*. (quoting CrRLJ 6.4(b)) As our Supreme Court emphasized in *Tesfasilasye*, "[i]f a juror can be excused for cause, they should be excused for cause. Biased jurors simply should not be seated. But GR 37 is qualitatively different and is aimed at curing a different problem. It is not an alternate way to dismiss jurors for cause." 200 Wn.2d at 359. Contrary to for cause challenges, a preemptory challenge is an objection to a juror for which no reason is given. CrR 6.4(e)(1); GR 37.

C.     GR 37 Interpretation and Application

Generally, we apply canons of statutory interpretation when construing a court rule. *Robinson*, 153 Wn.2d at 692. The plain language of a court rule controls when it is unambiguous. *Id.* at 693. In determining the plain language of a court rule, we must examine the entire rule as well as any related rules. *Id*. When determining the plain meaning of a statute, we must not add

words where the legislature chose to not include them. *State v. Yancey*, 193 Wn.2d 26, 30, 434 P.3d 518 (2019). Because we apply principles of statutory interpretation to court rule construction, we also must not add words to court rules where the rule-drafter chose to not include them. *See Id.* at 30; *Robinson*, 153 Wn.2d at 692.

Before GR 37 was adopted, courts used the *Batson*[1] test in evaluating whether a peremptory challenge was racially motivated. *Listoe*, 15 Wn. App. 2d at 320. Under *Batson*, the party opposing the peremptory challenge had to establish a prima facie case that the challenge was exercised for a discriminatory purpose. *Id.* If the party exercising the challenge provided a race-neutral justification, the court had to determine whether the contesting party established purposeful discrimination. *Id.*

GR 37 was adopted to "address the shortcomings of *Batson*" in terms of combating racial discrimination during jury selection. *Tesfasilasye*, 200 Wn.2d at 356-57. The purpose of GR 37 is to "eliminate the unfair exclusion of potential jurors based on race or ethnicity." GR 37(a). GR 37(c) provides that parties "may object to the use of a peremptory challenge to raise the issue of improper bias." Once a party raises an objection, the party seeking to exercise a peremptory challenge must articulate its reasons for the challenge. GR 37(d).

The trial court must then evaluate the party's justification for the peremptory challenge "in light of the totality of the circumstances." GR 37(e). But "[i]f the court determines that an *objective observer could view race or ethnicity as a factor* in the use of the peremptory challenge, then the peremptory challenge shall be denied." GR 37(e) (emphasis added). An objective observer is one who is "aware that implicit, institutional, and unconscious biases, in addition to

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

purposeful discrimination, have resulted in the unfair exclusion of potential jurors in Washington State." GR 37(f).

The court is not required to find purposeful discrimination to deny the peremptory challenge. GR 37(e). But a race neutral alternative explanation does not excuse the effect of language that appeals to racial bias. *Henderson v. Thompson*, 200 Wn.2d 417, 439, 518 P.3d 1011 (2022); *State v. Berhe*, 193 Wn.2d 647, 666, 444 P.3d 1172 (2019).

In determining whether the reason given in light of the totality of the circumstances is race-neutral, the court analyzes the circumstances outlined in subsections (g) stating:

> **(g) Circumstances Considered**. In making its determination, the circumstances the court should consider include, but are not limited to, the following:
> (i) the number and types of questions posed to the prospective juror, which may include consideration of whether the party exercising the peremptory challenge failed to question the prospective juror about the alleged concern or the types of questions asked about it;
> (ii) whether the party exercising the peremptory challenge asked significantly more questions or different questions of the potential juror against whom the peremptory challenge was used in contrast to other jurors;
> (iii) whether other prospective jurors provided similar answers but were not the subject of a peremptory challenge by that party;
> (iv) whether a reason might be disproportionately associated with a race or ethnicity; and
> (v) whether the party has used peremptory challenges disproportionately against a given race or ethnicity, in the present case or in past cases.

GR 37(g); *Tesfasilasye*, 200 Wn.2d at 358 ("We reiterate that this is not a checklist for trial courts to cross off but, instead, factors to be considered in making a determination.").

GR 37's plain language requires courts to view peremptory challenges with an awareness of institutional biases. GR 37(e), (f). It is clear that our criminal legal system perpetuates institutional biases against jurors and defendants who are racial or ethnic minorities. *See* Letter

9

from Wash. State Supreme Court to Members of Judiciary & Legal Cmty. (June 4, 2020)[2] ("Our institutions remain affected by the vestiges of slavery: Jim Crow laws that were never dismantled and racist court decisions that were never disavowed."). With these institutional biases in mind, we hold that GR 37 requires courts to deny a peremptory challenge if an objective observer could, in light of the totality of the circumstances, view a juror's race or ethnicity as a factor in the use of that peremptory challenge. This reflects the plain language and ordinary meaning of GR 37. The remedy for a GR 37 violation is a new trial. *Listoe*, 15 Wn. App. 2d at 329.

> D. An Objective Observer Could View Race as a Factor in the State's Challenge Against Juror 27.

Denham argues that the trial court erred when granting the State's peremptory challenge on juror 27 because its reasoning was invalid, and an objective observer could view race as a factor.

In response, the State argues that it exercised a peremptory challenge on juror 27 because of their specific answer to a specific question, which:

> indicated a concern that the decision here . . . would decide the fate of the defendant and expressed a lot of concern about the impact that [ ] would have on him. And it was the State's interpretation of that . . . that could be . . . an implicit bias . . . towards defense.

5 RP at 650. We agree with Denham.

Following the exercise of a peremptory challenge, Denham objected. Denham argued that it did not think the State's basis for the challenge was valid as juror 27's answer was consistent with the court's instructions. Denham added that the juror has "nothing whatsoever to do with a punishment that may follow a conviction, only so much as it should make them careful and I think that's what I took from that statement." 5 RP at 651.

---

[2]https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20News/Judiciary%20Legal%20Community%20SIGNED%20060420.pdf.

10

Once Denham objected to the preemptory challenge against juror 27, the State was required to articulate the reasons for the challenge. GR 37(d). Here, the State said that it exercised the challenge because of juror 27's answer to the question regarding their initial reaction after hearing the charges. Specifically, their answers showed an "indication of potential bias against the State" and "led to a perceived lack of empathy toward persons other than the defendant who may be affected by a homicide" because "Juror 27 was [ ] the only Juror who referred to Denham by name in answering the question." Br. of Resp't at 58, 61, 66. The State's argument further noted the reasoning behind their challenge as "Juror 27's focus on the impact of the charge on the defendant, initially without thought of other parties," and created concern for the State that it "may not get a fair trial if Juror 27 served." Br. of Resp't at 64. That said, even if these were race-neutral reasons on their face, we find the State's arguments unsupported in light of the totality of the circumstances..

Our analysis begins with GR 37(g). Two of the circumstances listed therein are significant here.

First, GR 37(g)(i) requires us to consider "whether the party exercising the peremptory challenge failed to question the prospective juror about the alleged concern." Here, after juror 27 made the comments that the State claims were the basis for the preemptory challenge, the State did not ask a single question to juror 27. Viewed objectively, this fact supports the conclusion that race could be a factor in the peremptory challenge of juror 27.

Second, GR 37(g)(iii) requires us to consider "whether other prospective jurors provided similar answers but were not the subject of a peremptory challenge by that party." When looking at the record, juror 27's expressions of concern about the severity of the charges and the impact of

11

said charges on Denham and other parties involved were *not notably different* from other juror's reactions to the same question.

Juror 27 stated "that there [was] a lot of responsibility behind being a juror in [the] case," and when asked if it would impact more than Denham, they answered "yes," but that the jury's "decision . . . affects multiple people, not just him. . . . [as] it would affect the victims' family. . . . But then also [Denham's] future as well." 4 RP at 319-20. The fact that juror 27 made a correct statement regarding the law at issue cannot be a basis to infer bias. In fact, jurors are instructed to keep in mind that just because a charge is filed against someone, it is not evidence that it is true. *See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (5th ed. 2021).

In comparison, other jurors also said that this trial would impact many people, including Denham and the victims' families. Specifically, jurors 4 and 32 provided similar answers to juror 27. Significantly juror 4 stated, "[I]n a criminal case, you're looking at, you know, prison time or that sort of thing that has more of an effect on the person's life." 3 RP at 154. Juror 4 stated that the "stakes are higher" in a criminal case, and confirmed that they were referring to the stakes for the defendant. 3 RP at 153. And juror 4 did not say anything about the victims' family. Yet the State did not exercise a peremptory challenge against juror 4, and juror 4 sat on the jury.

Juror 32 also noted in his initial response that the jury's decision would impact Denham. He then acknowledged that the decision would impact "everybody in the case." 4 RP at 323. The State did not exercise a peremptory challenge against juror 32, and juror 32 sat on the jury.

Viewed objectively, the fact that the State did not challenge juror 4 and juror 32 supports the conclusion that race could be a factor in the peremptory challenge of juror 27.

We also must consider whether the record supports the State's proffered reason for challenging juror 27—that his mention of how the trial would affect Denham reflected at least unconscious bias. "The trial court must sustain a GR 37 objection if the record does not support the reason given." *State v. Hale*, ___ Wn. App. 2d ___, 537 P.3d 707, 715 (2023). In *Tesfasilasye*, the Supreme Court held that the trial court should have denied the State's peremptory challenges of two jurors when the record did not support the State's reasons for the challenges. 200 Wn.2d at 359-61.

Here, the State believed that juror 27 could have implicit bias because he "indicated a concern that the decision here in this case would decide the fate of the defendant and expressed a lot of concern about the impact that that would have on him." 5 RP at 650. This was the only reason for its challenge that was expressed in the trial court.

First, the fact that juror 27 noted that the case would decide Denham's fate obviously is a true statement and is not a legitimate basis for inferring bias. Denham was in fact on trial, and the jury would in fact decide his fate.

Second, the record simply does not reflect that juror 27 expressed "a lot of concern" about the impact the trial would have on Denham. It is important to consider Juror 27's exact statements:

> [DEFENSE COUNSEL]: Do you think a case like this impacts more than just Mr. Denham?
> PROSPECTIVE JUROR NO. 27: Yes.
> [DEFENSE COUNSEL]: All right. It impacts a whole bunch of people, right?
> PROSPECTIVE JUROR NO. 27: Right.
> [DEFENSE COUNSEL]: So when I hear you saying that this is a big deal,—
> PROSPECTIVE JUROR NO. 27: Mm-hmm.
> [DEFENSE COUNSEL]: —in your mind, is it a big deal to everybody? Mr. Denham specifically? Maybe the State? Tell me kind of what your thought is about the impact and who it would impact on a case like this.
> PROSPECTIVE JUROR NO. 27: I suppose my initial was the accused, Mr. Denham.

[DEFENSE COUNSEL]: Why? Tell me why.

PROSPECTIVE JUROR NO. 27: Because our decision . . . I guess it affects multiple people, not just him. Yeah, it would affect the victims' family and. . . . But then also his future as well.

[DEFENSE COUNSEL]: So for juror 27, I hear you saying the gravity of this is significant for a lot of people and that was your first thought was this is a big deal.

PROSPECTIVE JUROR NO. 27: Correct.

4 RP at 319-320.

This exchange does not show that juror 27 was overly concerned about Denham. Instead, they first stated that the case would affect a lot of people, acknowledged that their first thought was about Denham, but then reemphasized that the jury's decision would affect not only Denham but multiple people.

The record does not show that juror 27 was biased, rendering the State's reason for challenging juror 27 deeply suspect and unsubstantiated. *See Omar*, 12 Wn. App. 2d at 754 ("GR 37(f) discourage[es] [the] acceptance of [ ] vague and unsubstantiated reasons on the basis that they might mask conscious or unconscious bias."). Further, the State did not ask juror 27 any follow-up questions regarding their answer of who may be affected, and its limited interaction with juror 27 failed to reveal whether they truly stood out from the other jurors in terms of their response and the impact the trial would have on Denham. GR 37(g)(iii).

We conclude, based on the totality of the circumstances, that an objective observer could view race as a factor in the State's peremptory challenge to juror 27. Therefore, the trial court erred in overruling Denham's GR 37 objection. The proper application of GR 37 leaves us no choice but to reverse the two convictions and apply the proper remedy—a new trial. *See Listoe*, 15 Wn. App. 2d at 329.

CONCLUSION

We reverse and remand for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Maxa, P.J.

_____
Che, J.